THE GUERRINI LAW FIRM
John D. Guerrini  (190972)
750 East Green Street, Suite 200
Pasadena, CA 91101
626-229-9611 telephone
626-229-9615 facsimile
guerrini@guerrinilaw.com

Attorneys for Plaintiffs Big Vision Miami Rentals,
LLC and Luis Bacardi
[4990]

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

**CV08-07526 ODW FMOx**

| | |
|---|---|
| BIG VISION MIAMI RENTALS, LLC, a Florida limited liability company; LUIS BACARDI, an individual, | Case No.: |
| | **COMPLAINT** |
| Plaintiffs, | |
| vs. | |
| BIG VISION RENTALS, LLC, a Nevada limited liability company; CHARLES D. HAIFLEY, an individual, | |
| Defendants. | |

Plaintiffs, BIG VISION MIAMI RENTALS, LLC, a Florida limited liability company (hereinafter referred to as "BVM") and LUIS BACARDI, an individual (hereinafter referred to as "BACARDI") (collectively, "Plaintiffs"), as and for their Complaint for, *inter alia*, conversion, fraud and misrepresentation, against the Defendants, BIG VISION RENTALS, LLC, a Nevada limited liability company ("BVR"), and CHARLES D. HAIFLEY, a/k/a CHUCK HAIFLEY, an individual ("HAIFLEY") (hereinafter collectively referred to as the "Defendants"), respectfully hereby allege, as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction of this action under the provisions of Title 28, U.S. Code §1332(a) (*to  wit*, federal diversity of citizenship jurisdiction), in that this is a civil action where the matters in controversy exceed the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States. See Title 28, U.S. Code § 1332(a)(1).

2.    Venue is proper in this Judicial District, under the provisions of Title 28, U.S. Code §1391(a), inasmuch as both Defendants reside in this Judicial District, and all Defendants reside in the same State (see Title 28, U.S. Code § 1391(a)(1)); a substantial part of the events or omissions giving rise to the claim have occurred in this Judicial District (see Title 28, U.S. Code § 1391(a)(2); and both Defendants are subject to personal jurisdiction, as of the time this action is being commenced, within this Judicial District (see Title 28, U.S. Code § 1391(a)(3)).  In addition to the foregoing, and pursuant to the provisions of Title 28, U.S. Code § 1391(c), the Defendant entity, BVR, for purposes of venue, is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time this action is commenced.  At all material times, and up to and including the present, the Defendant entity, BVR, conducts, engages in and transacts business in the State of California, and within this Judicial District, from BVR's business address located at 58 E. Santa Anita Avenue, Burbank, California 91502.

## THE PARTIES

3.    PLAINTIFF, BIG VISION MIAMI RENTALS, LLC, is a Florida limited liability company, with an address of 128 N.W. 25th Street, Miami, Florida 33127.

4.    PLAINTIFF, LUIS BACARDI, is a natural person, and is a resident of Miami-Dade County and is otherwise *sui juris*.

5.    DEFENDANT, BIG VISION RENTALS, LLC, is a Nevada limited liability company, with a mailbox address of 2250 East Tropicana, Las Vegas, Nevada, 89119.  BVR is registered to do business in the State of California and has a place of doing and transacting business located at 58 E. Santa Anita Avenue, in Burbank, California, 91502.

6.    DEFENDANT, CHARLES D. HAIFLEY, is a natural person, and resides in Los Angeles, California, within this Judicial District, and is otherwise *sui juris*.

## GENERAL ALLEGATIONS

7.    BVM and BACARDI are engaged in the business of providing film equipment rentals and film/video production services (collectively, "BVM's Services").

8.    BVR and HAIFLEY are engaged in the business of renting film equipment and film/video production services (collectively, "BVR's Services").

9.    BVR and HAIFLEY have claimed to be the owners of certain intellectual property rights and assets, including, among other things, the name, designation and mark "BIG VISION," for entertainment services including, but not limited to, motion pictures, television programs, and music videos, as well as the production of motion pictures, television programs and music videos for others.

10.    BVR and HAIFLEY have sought, for almost a year, to persuade BVM and BACARDI to enter into a licensing agreement, and to have BACARDI invest substantial amounts of capital into BVR's and HAIFLEY's business and operations.

11.    The objectives of BVR and HAIFLEY in trying to convince BVM and BACARDI to enter into a deal, and for BACARDI to provide capital,

1  were to enable BVR and HAIFLEY to expand their business, and to meet
2  their various and heavy financial obligations including, but not limited to, the
3  re-payment of debts (including significant equipment lease payments), by
4  BVM and BACARDI, for the benefit of BVR and/or HAIFLEY.

5      12.   The *quid pro quo* for the infusion of BACARDI's and/or BVM's
6  money was to result in a partial ownership interest, for BVM, in BVR.

7      13.   In addition to other proposed contractual terms and conditions,
8  however, the parties had discussed granting BVM the right to use BVR's
9  alleged intellectual property rights, including the use of the name "BIG
10  VISION."

11     14.   Furthermore, HAIFLEY was offering to provide, to BVM and
12  BACARDI, what he stated, and represented, to be his alleged business
13  acumen, and technical expertise in the film production services industry, in
14  exchange for a signed contract, and over time, for vast sums of money from
15  BACARDI and/or BVM.

16     15.   However, under the BVR and HAIFLEY proposals, BVM and
17  BACARDI were going to have to pay not only steep initial licensing fees, but
18  also on-going fees for use of the "BIG VISION" name, as well as for other
19  intellectual property rights and assets allegedly held and owned by BVR and
20  HAIFLEY.

21     16.   In addition, in the event BVR and HAIFLEY's proposals had been
22  accepted, BVM and BACARDI would have had to pay excessive on-going
23  monthly fees for the life of any agreement entered into, as well.

24     17.   The parties negotiated for many, many months, but were unable
25  to come to terms, instead, haggling over many different material terms and
26  conditions.

27

28

18.   In the final analysis, no meeting of the minds ever was achieved, the parties being unable to agree with each other on many different and material points.

19.   No written agreement (licensing agreement or otherwise) has ever been executed by and between the parties with respect to the subject-matter of this action.

20.   Among other material points, the parties were unable, or unwilling, to agree to such critical contractual terms and conditions for a potential licensing agreement as: the amount and duration of on-going monthly fees; the percentage amount and computational basis (*to wit*, "net" versus "gross" commissions) as to the royalties to be paid, by BVM and BACARDI, to BVR and HAIFLEY (*to wit*, revenue commissions); dispute resolution issues; termination provisions; issues related to the right to inspection of books and records (i.e., accounting issues); issues related to multi-million dollar personal guarantees; and a proposed perpetual royalty issues related to Blu-Ray duplicating technology.

21.   In addition, a number of the other proposed contractual terms by BVR and HAIFLEY were nothing more than unenforceable "agreements to agree," as to which BVM and BACARDI would not, and did not, accept.

22.   At some prior point in time (on or about May 27, 2008), BVR and HAIFLEY had persuaded BVM and BACARDI to wire transfer Three Hundred Thousand Dollars ($300,000.00)(U.S.), as and for a good faith deposit. Said deposit also was characterized as in the form of a loan, from BACARDI and BVM, to BVR and HAIFLEY, which loan was supposed to be evidenced by a Demand Note (prepared by BVR's own accountant), and naming BVM and/or BACARDI as the "creditor."

23.   A wire transfer in the amount of $300,000.00, from Miami's Ocean Bank, was, in fact, transmitted, on or about May 27, 2008, by, or on

1  behalf of BVM and BACARDI, with the understanding that those funds were
2  to be held in escrow by BVR and HAIFLEY. One thing is crystal clear, the
3  $300,000.00 did, and does, belong to BACARDI and BVM, not HAIFLEY and
4  BVR.

5      24.    Recently, in October, 2008, after going back and forth like a see-
6  saw, and going around in circles like a merry-go-round, the parties'
7  contractual negotiations irretrievably broke down.

8      25.    Plaintiffs, BVM and BACARDI, thereupon promptly demanded,
9  in writing, from BVR and HAIFLEY, the return of their afore-described good
10 faith deposit of $300,000.00.

11     26.    Notwithstanding the aforesaid demand, Defendants have ignored
12 or refused to refund the BACARDI/BVM money.

13     27.    Plaintiffs recently also learned, to their shock and dismay, that
14 Defendants were not holding the $300,000.00 in escrow, despite their
15 representation and promise to do so.

16     28.    In fact, Defendants now have indicated that they actually took the
17 $300,000, from BVM and BACARDI, erroneously (and self-servingly) labeling
18 that $300,000 as a partial payment of an "initial licensing fee."

19     29.    Upon information and belief, Defendants never held the
20 $300,000.00 in any escrow account, despite their representation and
21 promise to do so.

22     30.    Defendants, BVR and HAIFLEY, have refused or ignored the
23 Plaintiffs' afore-said written demand for the return of the $300,000.00 good
24 faith deposit, characterized to be in the form of a loan (which deposit was
25 supposed to have been held in escrow).

26     31.    Defendants, BVR and HAIFLEY, tried to cajole, convince and
27 persuade BVM and BACARDI, to sign an agreement and to invest millions
28 of dollars, by painting a bright and rosy picture of their business, for the

1 (illusory) benefit of BVM and BACARDI, in an attempt to convince BACARDI

2 and BVM to provide the $300,000.00 (as a first investment), and, then, to

3 sign a contract, and to continue investing, and investing heavily, in BVR.

4      32.   BVR and HAIFLEY further stated and represented to BVM and

5 BACARDI that their business was stable and financially healthy, and a

6 growing concern, and even was ready to expand.

7      33.   HAIFLEY also stated and represented and held himself out to

8 BVM and BACARDI to be a technical expert, a savvy businessman, and the

9 holder of numerous business contacts (namely, clients and industry

10 connections).

11      34.   BVR and HAIFLEY also stated and represented to BVM and

12 BACARDI that BVR and HAIFLEY had a recognized and reputable name (to

13 wit, BIG VISION), as well as other valid, and valuable, intellectual property

14 rights and assets which would form the basis of a license agreement.

15      35.   BVR and HAIFLEY further stated and represented to BVM and

16 BACARDI that they could secure "sweetheart" deals, as to new leases for

17 film equipment (both as to equipment already in BVR's inventory, as well as

18 for new equipment subsequently to be acquired), with certain equipment

19 lessors.

20      36.   BVR and HAIFLEY proposed that BVM and BACARDI would pay

21 a large share of BVR's and HAIFLEY's debts (to cover BVR's and

22 HAIFLEY's pre-existing equipment leases).

23      37.   BVR and HAIFLEY also sought to use the name recognition,

24 "celebrity factor," and financial wherewithal of BACARDI, personally, and to

25 "name-drop" his famous surname, as well as his personal good name and

26 reputation, in their attempts to "wheel and deal" with third-parties.

27

28

38.     Despite the glowing statements and prideful representations of BVR and HAIFLEY, however, the stark reality turned out to be that BVR is no Warner Bros. Studios, and HAIFLEY is no Cecille B. DeMille.

39.     Many of the Defendants' laundry-list of statements and representations, as it turns out, were made out of whole cloth.

40.     Defendants had misrepresented the financial condition of their business.  To begin with,  BVR and HAIFLEY had, and have, in excess of One Million Dollars ($1,000,000.00) worth of multiple equipment leases outstanding, with maturity dates extending all the way out to the year 2012.

41.     Furthermore, BVR was, and is, not only paying for the cost of equipment, but also for heavy financing costs with respect thereasto.

42.     BVR, as it turns out, owns next to nothing.  Rather, another HAIFLEY-controlled entity, BIG VISION, INC. ("BVI"), owns virtually all the important assets and property, not BVR, and not HAIFLEY, individually. (BVI nominally is owned and operated by HAIFLEY's ex-wife.)

43.     Over the last several years, BVR and/or its related entities have been and/or are indebted to a host of creditors (regarding equipment leases or other loans).

44.     BVR, according to official records, is stated to be a Nevada limited liability company.

45.     In point of fact, however, its designated business address is nothing more than a postal box facility located in Las Vegas, Nevada.  Its business headquarters is located in Burbank, California.

46.     BVR and HAIFLEY had sought approximately between Five to Six Million Dollars ($5,000,000.00-$6,000,000.00) in capital, from BVM and BACARDI, most of which would have been used to pay Defendants' own debts, and to allow Defendants to negotiate new leases to be entered into

1 | for acquisition of more equipment, and also to provide a multi-million dollar
2 | line of credit for Defendants.

3 |     47.   Defendants had misrepresented the success and financial health
4 | of their business to BACARDI and BVM.

5 |     48.   BVR (or its parent or affiliated entities) have not been running a
6 | good, sound, financially stable and very profitable business, as it turns out.

7 |     49.   BVR has filed what are referred to as "no revenue" tax returns.

8 |     50.   BVR has no real business history or "track record."

9 |     51.   BVR was, and is, rather like a shell entity, in which HAIFLEY and
10 | BVR wanted, and tried to persuade, BVM and BACARDI to invest their
11 | money, to the tune of multiple millions of dollars.

12 |     52.   The available records, such that they are, are for BVI, not BVR.

13 |     53.   In 2007, upon information and belief, BVI had a net income only
14 | in the low six figures.

15 |     54.   Notably, in 2006, BVI had a net loss.

16 |     55.   BVR and HAIFLEY also had boasted to BVM and BACARDI of
17 | their crack "management team" at BVR, and other, related self-
18 | aggrandizement in a similar vein.

19 |     56.   In reality, the " management team" turned out to be HAIFLEY's
20 | own, young, relatively inexperienced, and untested, daughters, namely,
21 | ShiRena Haifley and Krystal Haifley, not some high-powered, experienced
22 | business executives with industry connections and commercial acumen.

23 |     57.   BVR and HAIFLEY also tried to convince, cajole and persuade
24 | BVM and/or BACARDI to sign off on an additional line of credit, worth
25 | another Two Million Dollars ($2,000,000.00); as it turns out, that money
26 | really was sought by Defendants in order to cover BVR's own negative cash
27 | flow.

28 |

58.   Defendants' statements and representations about their intellectual property rights simply were not true and Defendants knew they were not true when they made them.

59.   BVR and HAIFLEY have failed to apply for, or enforce, or maintain, and/or police their alleged intellectual property rights.

60.   For example, the former U.S. Service Mark Registration for BVI's lone name, designation, and mark, to wit, the ex-service mark "BIG VISION," (former Reg. No. 2,493,910), was cancelled on July 4, 2008, by the United States Patent and Trademark Office ("USPTO"), due to the failure of BVI to file an appropriate Section 8 Affidavit.

61.   BVR and HAIFLEY also have failed to enforce, monitor and/or protect their own advertising, marketing or promotional materials, from an intellectual property perspective.

62.   BVR and HAIFLEY likewise have failed to protect their own Internet website, from an intellectual property perspective.

63.   BVR's business premises in California is, upon information and belief, not owned by BVR, but rather is owned by yet another HAIFLEY-controlled entity, BV Studios, LLC, which, in turn, is owned by BVI.

64.   Upon information and belief, not BVR, but rather BVI, owns whatever intellectual property rights do exist; BVR and HAIFLEY claim they have the right to use same and to assign, transfer or license those rights, although that right has never been demonstrated.

65.   Upon information and belief, neither BVR, nor BVI, holds any registered U.S. or State trademarks, for "BIG VISION," or otherwise.

66.   Upon information and belief, neither BVR, nor BVI, holds any registered U.S. or State service marks, for "BIG VISION," or otherwise.

67.   Upon information and belief, neither BVR, nor BVI, holds any U.S. Copyright Registrations, related to "BIG VISION," or otherwise.

68.   Neither BVR, nor BVI, own or possess any strong or famous mark in "BIG VISION."

69.   Furthermore, upon information and belief, there are a number of third-party interlopers and/or infringers vis-a-vis the "BIG VISION" name, thanks to BVR's (and/or BVI's) negligence and inattention to their own alleged intellectual property rights and assets.

70.   Despite Defendants' representations to the contrary, the operation of BVR turned out utterly to lack sophistication and to ignore basic commercial safeguards; for example: no non-disclosure or anti-competition agreements were being utilized; no business interruption insurance coverage was held or being applied for; and no key person insurance coverage was held or being applied for.

71.   By way of example, BVR and HAIFLEY tried to place their own (inflated) values upon their own equipment; no independent appraisals ever were proffered in support thereof.

72.   In addition, excessively high royalties were sought, predicated upon a calculation utilizing "gross," as opposed to "net" revenues, which would have virtually ensured that BVM and BACARDI would not have made any money and would likely not ever have seen even a return of the proposed, substantial capital investment.

73.   The accounting papers and records of BVR (and/or BVI) were not audited.

74.   BVM and BACARDI no longer had any trust or confidence in the proposed deal, particularly after recalling the prior statements and misrepresentations of HAIFLEY and/or BVR, and comparing those statements and misrepresentations to the reality of the physical plant, hard copy documents and financial and tax information relating to BVR and HAIFLEY.

75.   BVR and HAIFLEY, in reality, were at least approximately One Million Dollars ($1,000,000.00) in debt when they attempted to persuade BACARDI and BVM to invest heavily in BVR, a "shell" entity.

76.   Furthermore, the alleged intellectual property rights of BVR (through BVI or otherwise) were certainly not worth very much, and were worth considerably less without even one (1) registered mark to truthfully boast ownership of.

77.   BVR and HAIFLEY knew, or should have known, that their alleged name and mark and other intellectual property "rights" or "assets," to the extent they even existed, were not properly being monitored, enforced, policed, and/or maintained.

78.   BACARDI and BVR, through their legal counsel and others, carefully considered and weighed the deal.   In the final analysis, the proposed deal bore far too high of a price tag, and far too much risk, for BVM and BACARDI to agree to.

79.   Furthermore, the proposed deal between the parties was not deemed to be a sound or prudent business investment for Plaintiffs to risk any further consideration, involvement, time, effort or expenditure of capital.

80.   Following such investigation and study, as well as a cost-benefit analysis, Plaintiffs, BVM and BACARDI, concluded they could not, and would not be able to, come to terms with BVR and HAIFLEY as to a licensing agreement.

81.   Accordingly, no meeting of the minds having been achieved, no agreement has ever been entered into between the parties.

///
///
///
///

## COUNT I:

## CONVERSION

82.   Plaintiffs hereby repeat, reallege and reaver Paragraphs 1 through 81, *supra*, and would further state, as follows:

83.   Defendants, BVR and HAIFLEY, wrongfully obtained the monies from the Plaintiffs, BVM and BACARDI, and used the said monies for Defendants' own purposes and financial gain.

84.   Defendants, BVR and HAIFLEY, knowingly obtained and used such monies owned by Plaintiffs, and to which Plaintiffs are entitled, with the intent to permanently deprive Plaintiffs of the right to such monies, and to appropriate such monies for Defendants' own purposes and financial gain.

85.   Defendants, BVR and HAIFLEY, have wrongfully retained the said monies and exercised dominion and control over the said monies, for the purposes of deriving a benefit from their unauthorized receipt, retention and/or spending of Plaintiffs' monies.

86.   Prior to the filing of this action, the Plaintiffs, or their representatives, have made written demands for payment and/or return of the said monies, but the Defendants, BVR and HAIFLEY, have failed, refused and/or ignored all of said demands for the return of the monies.

87.   As a result, the Plaintiffs have been injured and have suffered damages from the Defendants' wrongful conversion and use of Plaintiffs' monies, to which the Plaintiffs are entitled.

**WHEREFORE**, Plaintiffs hereby demand Judgment against the Defendants, BVR and HAIFLEY, for damages, together with such other, further and different relief as this Court deems just, equitable and proper.

/ / /

/ / /

/ / /

## COUNT II:

## **BREACH OF FIDUCIARY RESPONSIBILITY**

88.    Plaintiffs hereby reallege and reaver the allegations contained in Paragraphs 1 through 81, *supra*, and would further state, as follows:

89.    Defendants owed a fiduciary duty to Plaintiffs, based upon their potential future business relationship.

90.    Defendants were under an obligation, to Plaintiffs, to refrain from acting contrary to, or in direct conflict, with the interests of Plaintiffs.

91.    Defendants breached their fiduciary duty of honesty and fair dealings by engaging in the conduct or activities described in the General Allegations, *supra*, and by acting contrary to, or in direct conflict with, the interests of Plaintiffs.

92.    Plaintiffs have suffered damages as a result of Defendants' breach of fiduciary responsibility.

**WHEREFORE,** Plaintiffs hereby demand Judgment against Defendants for compensatory damages, interest, court costs, and any other, further, or different relief which this Court deems just, equitable and proper.

## COUNT III:

## **FRAUD**

93.    Plaintiffs hereby repeat, reallege and reaver the allegations set forth in Paragraphs 1 through 81, *supra*, and would further state, as follows:

94.    The Defendants knowingly and willfully induced Plaintiffs, by certain representations, to engage in and provide monies to Defendants, with the intention not to repay the money to the Plaintiffs.

///

///

95.    The said representations were made by the Defendants, for the purposes of inducing the Plaintiffs to part with their valuable monies and to provide those valuable monies to the Defendants.

96.    The representations made by Defendants were false, and known by them to be false, when made to Plaintiffs.

97.    The Plaintiffs relied upon the representations made by the Defendants, and were, thereby, induced to send, by wire, a good faith deposit of $300,000.00 (U.S.) to the Defendants, which was supposed to be held in escrow.

98.    The representations made by Defendants, were relied upon by the Plaintiffs, all to the Plaintiffs' great detriment, injury and loss.

**WHEREFORE**, Plaintiffs hereby demand compensatory and punitive damages against the Defendants, together with such other, further and different relief as this Court deems just, equitable and proper.

## COUNT IV:

## UNJUST ENRICHMENT

99.    Plaintiffs hereby repeat, reallege and reaver Paragraphs 1 through 81, *supra*, and would further state, as follows:

100.    Defendants wrongfully obtained and utilized Plaintiffs' monies, as more particularly described, *supra*.

101.    Defendants have had the use and benefit of Plaintiffs' said monies, for Defendants' own benefit, and without Plaintiffs' consent.

102.    Prior to the filing of this action, Plaintiffs made demands of Defendants for the payment or return of the said monies, all of which demands have been to no avail.

103. Defendants have been unjustly enriched by reason of the use and benefit of Plaintiffs' monies, as aforesaid.

**WHEREFORE,** Plaintiffs hereby demand Judgment against Defendants, for damages, together with interest thereon, at the highest rate of interest allowed by law, as well as such other, further and different relief as this Court deems just, equitable or proper.

## COUNT V:
## FRAUD IN THE INDUCEMENT

104. Plaintiffs hereby repeat, reallege and reaver Paragraphs 1 through 81, *supra*, and would further state, as follows:

105. Defendants uttered false statements to Plaintiffs concerning material facts.

106. Defendants knew that the statements or representations made to Plaintiffs were false.

107. The Defendants intended that, by making the statements or representations, that they would induce the Plaintiffs to act upon them.

108. The Plaintiffs relied upon the Defendants' representations.

109. The Plaintiffs suffered damages in justifiable reliance upon the Defendants' representations.

**WHEREFORE,** Plaintiffs hereby demand compensatory and punitive damages against the Defendants, together with such other, further and different relief as this Court deems just, equitable, and proper.

## COUNT VI:
## FRAUDULENT MISREPRESENTATION

110. Plaintiffs hereby repeat, reallege and reaver Paragraphs 1 through 81, *supra*, and would further state, as follows:

111. Defendants made false statements to the Plaintiffs concerning material facts.

112. Defendants knew that their representations to Plaintiffs, when made, were false.

113. Defendants intended that their representations would induce the Plaintiffs to act upon them.

114. The Defendants' representations resulted in consequent injury and damage to the Plaintiffs acting in reliance upon the Defendants' representations.

**WHEREFORE**, Plaintiffs hereby demand compensatory and punitive damages against the Defendants, together with such other, further and different relief as this Court deems just, equitable, and proper.

## COUNT VII:
## CONSTRUCTIVE FRAUD

115. Plaintiffs hereby repeat, reallege and reaver Paragraphs 1 through 81, *supra*, and would further state, as follows:

116. Defendants were under a duty, based upon a confidential or fiduciary relationship with Plaintiffs.

117. Defendants abused that confidential or fiduciary relationship with the Plaintiffs.

118. Defendants took unconscionable advantage of the Plaintiffs.

119. Defendants engaged in misrepresentations of fact, and concealment of facts, *vis-a-vis* the Plaintiffs.

120. Defendants have perpetrated a fraud against the Plaintiffs by taking an improper advantage of the confidential or fiduciary relationship, at the expense of the confiding parties, the Plaintiffs.

121. As a result of the foregoing, the Plaintiffs have been damaged.

1  **WHEREFORE**, Plaintiffs hereby demand compensatory and
2  punitive damages against the Defendants, together with such other,
3  further and different relief as this Court deems just, equitable, and proper.

4

5  ### COUNT VIII:

6  ### **CONSTRUCTIVE TRUST**

7  122.  Plaintiffs hereby repeat, reallege and reaver Paragraphs 1
8  through 81, *supra*, and would further state, as follows:

9  123.  Plaintiffs are entitled to a constructive trust in order to restore
10 Plaintiffs' property to them, and to prevent unjust enrichment.

11 124.  As described in the General Allegations, *supra*, there existed
12 a confidential or fiduciary relationship between Plaintiffs and Defendants.

13 125.  Plaintiffs relied upon the expressed or implied promises of
14 BVR and HAIFLEY with respect to BVM and BACARDI's provision of the
15 $300,000.00 (U.S.) good-faith deposit and to hold same in escrow.

16 126.  The Defendants will be unjustly enriched if a constructive trust
17 is not imposed upon the $300,000.00, which sum will represent the
18 proceeds of the Plaintiffs' $300,000.00 good faith deposit.

19 127.  The imposition of a constructive trust is necessary herein to
20 restore the property of the Plaintiffs, or the proceeds thereof, to the
21 rightful owner, *to wit*, the Plaintiffs, and to prevent unjust enrichment.

22 **WHEREFORE**, Plaintiffs hereby demand the imposition of a
23 constructive trust against Defendants and the $300,000.00 (U.S.) in good
24 faith deposit funds, along with an award of court-costs, together with such
25 other, further and different relief as this Court deems just, equitable, and
26 proper.

27 / / /

28 / / /

## COUNT IX:

## MONEY HAD & RECEIVED

128. Plaintiffs hereby repeat, reallege and reaver Paragraphs 1 through 81, *supra*, and would further state, as follows:

129. On or about May 27, 2008, at Burbank, California, Defendants became indebted to Plaintiffs, in the sum of $300,000.00, for money had and received by Defendants from Plaintiffs, for the use and benefit of Defendants.

130. Plaintiffs have repeatedly demanded payment from Defendants.

131. No payment has been made by the Defendants, and there is now due and owing, to Plaintiffs, the sum of $300,000.00, with interest on that amount, at the legal rate, from May 27, 2008.

**WHEREFORE**, Plaintiffs hereby demand the sum of $300,000.00, along with an award of court-costs, together with such other, further and different relief as this Court deems just, equitable, and proper.

## COUNT X:

## MONEY LENT

132. Plaintiffs hereby repeat, reallege and reaver Paragraphs 1 through 81, *supra*, and would further state, as follows:

133. On or about May 27, 2008, at Burbank, California, Plaintiffs paid to Defendants the sum of $300,000.00 for money lent by Plaintiffs, to the Defendants, at the latter's request.

134. No payment has been made by the Defendants, and there is now due and owing, to Plaintiffs, the sum of $300,000.00, with interest on that amount, at the legal rate, from May 27, 2008.

1    **WHEREFORE**, Plaintiffs hereby demand the sum of $300,000.00,

2    along with an award of court-costs, together with such other, further and

3    different relief as this Court deems just, equitable, and proper.

4

5                  **JURY TRIAL DEMANDED**

6    Plaintiffs, BIG VISION MIAMI RENTALS, LLC, a Florida limited

7    liability company and LUIS BACARDI, an individual, hereby demand a

8    trial by jury of all matters so triable as a matter of right.

9

10   Dated:  November 13, 2008       THE GUERRINI LAW FIRM

11

12                         By:

13                         John D. Guerrini

14                         Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Otis D. Wright II and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

## CV08- 7526 ODW (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

JOHN D. GUERRINI (190972)
THE GUERRINI LAW FIRM
750 E. GREEN ST., SUITE 200
PASADENA, CA 91101

ATTORNEYS FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Big Vision Miami Rentals, LLC, a Florida limited liability company; Luis Bacardi, an individual<br>**PLAINTIFF(S)**<br><br>v.<br><br>Big Vision Rentals, LLC, a Nevada limited liability company; Charles D. Haifley, an individual<br><br><br>**DEFENDANT(S).** | **CASE NUMBER**<br><br>**CV 08-07526 ODW FMOx**<br><br><br><br>**SUMMONS** |

TO:   DEFENDANT(S):   BIG VISION RENTALS, LLC, a Nevada limited liability company and CHARLES D. HAIFLEY, an individual

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __John D. Guerrini__, whose address is __750 E. Green St., Suite 200, Pasadena, CA 91101__. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**LA'REE HORN**

Dated: __NOV 1 4 2008__

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>BIG VISION MIAMI RENTALS, LLC, a Florida limited liability company;<br>LUIS BACARDI, an individual | DEFENDANTS<br>BIG VISION RENTALS, LLC, a Nevada limited liability company; CHARLES<br>D. HAIFLEY, an individual |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing<br>yourself, provide same.)<br>John D. Guerrini, The Guerrini Law Firm<br>750 E. Green St., Suite 200, Pasadena, CA 91101<br>Phone: 626-229-9611 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:** **JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT: $** 300,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
CONVERSION, MONEY HAD AND RECEIVED; MONEY LENT; FRAUD

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 446 American with Disabilities - Other | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:    Case Number: **CV08-07526**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Florida |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date November 13, 2008

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |